SEARCH WARRANT (REV. 3/13)

# UNITED STATES DISTRICT COURT
## for the District of Arizona

*In the Matter of the Search of*

A residence located at 342 South 40th Street #77, in Mesa, Arizona, in the Royal Palms Village Manufactured Home Community.

USAO#: 2021R03992

No. 21 - 308 MB

SEARCH WARRANT

TO:   Any authorized law enforcement officer

Application and Affidavit having been made before me by a federal law enforcement officer, requesting the search of the following ☐ person or ☒ premises known as *(name, description and/or location)*:

**See Attachment A, attached and incorporated by reference herein**

located in the District of Arizona is believed to conceal *(identify the person or describe the property to be seized)*:

**See Attachment B, attached and incorporated by reference herein**

I find that the affidavit(s), and/or any recorded testimony, establish probable cause to search and seize the person or property described.

YOU ARE COMMANDED to execute this warrant on or before **October 27, 2021**
*(not to exceed 14 days)*

☒   in the daytime 6:00 a.m. to 10:00 p.m.      ☐   at any time in the day or night as I find reasonable cause has been established.

You must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the United States Magistrate Judge who authorized this warrant.

Subscribed and Sworn to telephonically.

**October 13, 2021 @ 9:15 pm**
*Date & Time Issued*

~~Tucson~~, Arizona
**Phoenix**
*City and State*

/s/ Michelle Burns
*Judge's signature*

~~Eric J. Markovich~~, United States Magistrate Judge

Michelle Burns
*Printed name and title*

SEARCH WARRANT RETURN (REV. 03/13)

# RETURN

Case No.:

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
|---|---|---|
| | | |

INVENTORY MADE IN THE PRESENCE OF

INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT

# NOT EXECUTED

❏ This Warrant was Not Executed.
*(check this box if the warrant was never executed and leave the sections above blank.)*

# CERTIFICATION

I declare under penalty of perjury that this inventory is correct and was returned to the designated judge.

Date: _____

_____
Executing Officer's Signature

_____
Printed Name and Title

**Attachment A**

Property to be searched is located at 342 S. 40th Street #77 in Mesa, Arizona. This is a manufactured home located in the Royal Palms Village Manufactured Home Community. This is a single story, single family home that is blue in color with white trim, with a north facing front door, and the number "77" posted on the eastern most front porch post.









**Attachment B**

1. Books, records, receipts, notes, ledgers, personal checks and other papers relating to the transportation, harboring, and smuggling of illegal aliens.

2. Papers, tickets, notes, receipts, and other items relating to domestic and international travel.

3. Books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, and cashier checks, bank checks, safe deposit box keys, money wrappers, and other items evidencing the obtaining, secreting, transfer, and/or concealment and /or expenditure of money.

4. Electronic equipment, such as cellular telephones and computers, utilized in the communication and coordination of the smuggling of illegal aliens, and the payment of such activities.

5. United States currency.

6. Photographs, including still photos, negatives, videotapes, films, undeveloped film and the contents therein, slides, in particular photographs of co-conspirators, of assets and/or illegal aliens.

7. Address and/or telephone books, Rolodex indices, electronic organizers, and papers reflecting names, addresses, telephone numbers, pager numbers, fax numbers and/or telex numbers of co-conspirators, customers, financial institutions, and other individuals or businesses with whom a financial relationship exist.

8. Indicia of occupancy, residency, rental and/or ownership of the premises described herein, including, by not limited to utility and telephone bills, canceled envelopes, rental, purchase of lease agreements, and keys.

9. All types of safes, including but not limited to, wall safes, floor safes, free-standing safes, locked strong boxes, and locked containers and the contents therein.

10. Illegal aliens.

APPLICATION FOR SEARCH WARRANT (REV. 03/13)

# UNITED STATES DISTRICT COURT
## for the District of Arizona

*In the Matter of the Search of*

A residence located at 342 South 40th Street #77, in Mesa, Arizona, in the Royal Palms Village Manufactured Home Community.

USAO#: 2021R03992

No. 21-308 MB

APPLICATION FOR
SEARCH WARRANT

I, Chad Lakosky, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that ☐ on the person of or ☒ on the premises known as *(name, description and/or location)*:

**See Attachment A, attached and incorporated by reference herein**

located in the District of Arizona there is now concealed *(identify the person or describe the property to be seized)*:

**See Attachment B, attached and incorporated by reference herein**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of 8 U.S.C. § 1324.

The application is based on these facts:

**See attached Affidavit incorporated by reference herein.**

Reviewed by AUSA Anna Wright
*AUSA printed last name and inked initials*
ANNA WRIGHT Digitally signed by ANNA WRIGHT
Date: 2021.10.13 17:15:15 -07'00'

Subscribed and Sworn to telephonically.

October 13, 2021
*Date*
Tucson, Arizona
*City and State*
Phoenix

CHAD L LAKOSKY Digitally signed by CHAD L LAKOSKY
Date: 2021.10.13 17:37:06 -07'00'
*Applicant's signature*
Chad Lakosky
*Printed name and title*

*Judge's signature*
Eric J. Markobich, United States Magistrate Judge
*Printed name and title*
Michelle Burns

## Attachment A

Property to be searched is located at 342 S. 40th Street #77 in Mesa, Arizona. This is a manufactured home located in the Royal Palms Village Manufactured Home Community. This is a single story, single family home that is blue in color with white trim, with a north facing front door, and the number "77" posted on the eastern most front porch post.









**Attachment B**

1. Books, records, receipts, notes, ledgers, personal checks and other papers relating to the transportation, harboring, and smuggling of illegal aliens.

2. Papers, tickets, notes, receipts, and other items relating to domestic and international travel.

3. Books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, and cashier checks, bank checks, safe deposit box keys, money wrappers, and other items evidencing the obtaining, secreting, transfer, and/or concealment and /or expenditure of money.

4. Electronic equipment, such as cellular telephones and computers, utilized in the communication and coordination of the smuggling of illegal aliens, and the payment of such activities.

5. United States currency.

6. Photographs, including still photos, negatives, videotapes, films, undeveloped film and the contents therein, slides, in particular photographs of co-conspirators, of assets and/or illegal aliens.

7. Address and/or telephone books, Rolodex indices, electronic organizers, and papers reflecting names, addresses, telephone numbers, pager numbers, fax numbers and/or telex numbers of co-conspirators, customers, financial institutions, and other individuals or businesses with whom a financial relationship exist.

8. Indicia of occupancy, residency, rental and/or ownership of the premises described herein, including, by not limited to utility and telephone bills, canceled envelopes, rental, purchase of lease agreements, and keys.

9. All types of safes, including but not limited to, wall safes, floor safes, free-standing safes, locked strong boxes, and locked containers and the contents therein.

10. Illegal aliens.

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Special Agent Chad Lakosky, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of a residence located at 342 South 40th Street #77 in Mesa, Arizona, which is more particularly described in Attachment A.

2. The purpose of this application is to seize evidence, more particularly described in Attachment B of this search warrant application, of violations of 8 U.S.C. § 1324.

3. I am an "investigative or law enforcement officer" within the meaning of 18 U.S.C. § 2510(7) and am empowered by law to conduct investigations and to make arrests for offenses enumerated in 50 U.S.C. § 1705. I am a Special Agent with the United States Department of Homeland Security Investigations (HSI). I have been so employed since March 2018. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia, where I received training in, among other things, criminal investigative techniques, and investigations of violations of United States Codes, to include investigations of Titles 8, 18, 19, 21, and 31.

4. Prior to my employment with HSI, I was employed by the Pinal County Sheriff's Office in the State of Arizona for 10 years from April 2008 to March 2018 as a Deputy Sheriff. During that time, I investigated violations of state criminal and civil laws, conducted interviews, conducted covert surveillance, collected evidence, and made arrests for violations of criminal state laws. I was also assigned as a detective to the United States Marshal's Service Violent Offender Task Force, in which my duties included investigations into the whereabouts of state, local, and federal fugitives. During that assignment, I received training in conducting criminal investigations, covert surveillance, and evidence collection. Prior to that, I was employed as a police officer in the Town of Marana, Arizona from January 2006 to April 2008, where I had

similar duties as my employment as a Deputy Sheriff. I am also a graduate of the Central Arizona Regional Law Officer's Training Academy, where I received training in, among other things, criminal investigative techniques, and investigations of violations of criminal and state statutes.

5.   During my law enforcement career, I have received formal training, as well as on-the-job training, relative to the investigation and interdiction of human smuggling and human trafficking. I have become knowledgeable regarding the trafficking methods employed by alien smugglers to conceal, transport, resupply, and harbor aliens present in the United States without admission or parole.

6.   Throughout my career, I have performed various tasks which include, but are not limited to: (a) functioning as a case agent, which entails the management of investigations in several investigative program areas to include human and drug smuggling, financial crimes, immigration violations, and crimes involving child exploitation; (b) performing physical surveillance and thereby observing and recording movements of persons suspected of various criminal activities; (c) interviewing witnesses, cooperating individuals and informants; (d) written affidavits in support of federal search and seizure warrants; and (e) testified before federal grand juries.

7.   I am familiar with the circumstances described below, both through my personal participation in this investigation and by the discussions I have had with other law enforcement officers who have knowledge of this case. This affidavit is being submitted for the limited purpose of securing a search warrant; therefore, I have not included every fact known to me or other law enforcement officers concerning this investigation. I have set forth below only the facts that I believe are necessary to establish probable cause for the issuance of a search warrant.

## PROBABLE CAUSE

### August 26, 2021, Alien Smuggling Event

8.   In August 2021, Homeland Security Investigations (HSI) Special Agents (SA) in Sells, Arizona, initiated an investigation into a social media human smuggling coordinator

identified on the "Snapchat" social networking application/website as username "username3234," and display name "GET-_-BIG" (hereinafter "GB") who directs human smuggling operations through the Tohono O'odham Indian Reservation. Based on posts made by GB, it appeared that GB recruited individuals on the social networking application to participate in the transportation of illegal aliens through and around the Tohono O'odham Nation to Phoenix, Arizona, and the surrounding metropolitan area.

9. On August 24, 2021, Undercover Agent 2715 (UCA-2715) viewed a story posting by GB reading "HMU for work my boy came today made a bag." UCA-2715 responded to the posting and GB asked UCA-2715 contact him on WhatsApp via phone number 602-299-2246. Pursuant to GB's request, UCA-2715 messaged GB on WhatsApp with the number provided by GB. The conversation yielded an offer by GB for UCA-2175 to make up to $10,000 per day picking up "immigrants." After UCA-2715 expressed concern about the risk for doing so and asked how many immigrants UCA-2715 had to transport to make $10,000, GB further enticed UCA-2715 by recounting that an acquaintance of GB made $21,000 from two trips. GB also indicated that "some people are sloppy" and that he has "safe routes" that would be used for smuggling activity. GB further elaborated that he had trips every day and that the pick-up locations were either Sells or Sasabe, Arizona, with a destination of Phoenix, Arizona. At the conclusion of the conversation, GB agreed to contact UCA-2715 the next time GB had work.

10. On August 26, 2021, at approximately 12:13 p.m., GB messaged UCA-2715 indicating that he had work. GB specified that there were four individuals that were ready to be picked up in Sells, Arizona, and GB offered UCA-2715 $1,400 to do so. UCA-2715 accepted GB's proposal. At approximately 2:25 p.m., GB provided UCA-2715 with the coordinates of 31.911947, -111.869659 as a pick-up location.

11. At approximately 5:34 p.m., UCA-2715 advised GB that UCA-2715 was in the area and ready to pick up the individuals. GB asked UCA-2715 to share his/her live location and to send a photo of his/her vehicle. UCA-2715 complied. At approximately 5:35 p.m., GB directed UCA-2715: "When they get in tell them to lay down and hide In Spanish." UCA-2715

3

acknowledged and confirmed with GB that there were four individuals. GB affirmed that there were four individuals. GB then provided UCA-2715 with the address of 16237 West Ajo Highway in Tucson, Arizona, was the "way out." At approximately 5:39 p.m., GB provided UCA-2715 with a second location, and indicated that the individuals had been moved to the coordinates of 31.912506, -111.868790. At approximately 5:54 p.m., UCA-2715 arrived near coordinates 31.912506, -111.868790, at the front of a residence located off Artesan Road in Sells, Arizona. GB initially indicated that the individuals were not in the house, then indicated that they were inside of the house. Ultimately, GB redirected UCA-2715 to a different location. At approximately 6:02 p.m., GB advised UCA-2715 there would be "5 heads," because there would be one guide among the group. GB further indicated that UCA-2715 would not be paid for transporting the guide.

12. At approximately 6:17 p.m., GB provided UCA-2715 with the coordinates of 31.913040, -111.866852 as a third location for the individuals. GB also forwarded screen captures and an audio message from a third party (UM#1), attempting to guide UCA-2715 to the new pick-up location. Throughout their communications, GB referred to UM#1 as his "boss". At approximately 6:38 p.m., GB provided a fourth location for the individuals: 31.913292, -111.866287. At approximately 7:11 p.m., GB provided UCA-2715 with the coordinates of 32.512512, -111.948866 as the drop off location. GB also indicated that it would be at mile marker 26 on Route 15. GB also requested that UCA-2715 advise him when UCA-2715 had dropped them off.

13. At approximately 7:16 p.m., a slender Hispanic male emerged from the brush adjacent to where UCA-2715 was parked. UM#2 was fully dressed in camouflage attire and gestured at UCA-2715. UCA-2715 waved him over and five additional males who also emerged from the brush, dressed in camouflage, trailed behind UM#2. UCA-2715 spoke to the individuals in Spanish, indicating to them to get in the vehicle and duck down. The six individuals complied. UCA-2715 asked them if there were any others, and they responded in the negative. UCA-2715 then drove a predetermined route away from the pickup spot.

4

14. Shortly thereafter, the individuals were placed into custody by HSI and United States Border Patrol personnel without incident. The six apprehended individuals were determined to be 5 male subjects from Guatemala and one male subject from Mexico. All individuals admitted to being illegally present in the United States without permission from the United States Government to enter or remain in the country. During a consensual search of a cell phone belonging to one of the apprehended aliens, agents observed communications and photos directly linked to the smuggling event coordinated with BG and UCA-2715. Photos of the vehicle used by UCA-2715 that were sent to MARTINEZ by UCA-2715 to identify the vehicle that UCA-2715 would be driving to pick up the aliens were located on one of the phones belonging to one of the apprehended aliens.

15. At approximately 7:23 p.m., UCA-2715 advised GB that he/she had been stopped by police and that UCA-2715 had to run. GB indicated that he would notify his boss. At approximately 7:45 p.m. GB directed UCA-2715 to "Delete this app and re download it once your home."

### **Identification of Fabian MARTINEZ as "GB"**

16. On September 1, 2021, I submitted subpoena number ICE-HSI-SS-2021-00900 to AT&T, Inc. for records related to phone number 602-299-2246. On September 7, 2021, I reviewed the records sent to me by AT&T, Inc. in compliance with the subpoena. I observed that the records included phone records showing incoming and outgoing phone calls and messages, as well as account holder information. The "Financial Liable Party" was listed as Monica Valenzuela at 342 South 40th Street in Mesa, Arizona, with a contact name listed as "Fabian MARTINEZ," a contact work phone as 602-299-2246, a contact home email as "PS3400480@gmail.com." The "User Information" identified Fabian MARTINEZ as the user with the same address as Monica Valenzuela, and an IMSI number listed as 310280017613077. Checks of law enforcement and open-source databases showed a subject identified as Fabian MARTINEZ, with a date of birth of October 18, 1998, as residing at 342 South 40th Street #77 in Mesa, Arizona (Target Residence).

17. On September 8, 2021, United States Border Patrol Task Force Officer (TFO) Enrique Nuno and I conducted surveillance at the Target Residence to attempt to locate and identify Fabian MARTINEZ. Arizona MVD record checks for MARTINEZ provided a photograph of MARTINEZ and the same address as provided in the subscriber information for phone number 602-299-2246. Upon arrival at the address at approximately 11:30 a.m., TFO Nuno and I observed the location to be a blue house/prefabricated home with white trim and the number "77" posted on a front porch pillar. A brown US Postal Service package was observed sitting on the steps of the front porch with the top of the box open with what appeared to be black plastic vehicle parts sticking out of the top. The shipping label on the box showed the package was sent from "Unique Motorsports" in Rancho Cucamonga, California, and was addressed to MARTINEZ at that address. TFO Nuno located a 2015 silver Jeep Patriot SUV parked on the west side of the residence displaying Arizona temporary license plate U407109. A registration check showed that the vehicle was registered to MARTINEZ. The driveway attached to the residence was vacant and looked as if another vehicle may also park in that spot. No subjects were observed coming to or leaving the residence.

18. I checked of additional law enforcement databases for any law enforcement contact with state or local agencies. I received the following reports from the listed agencies:

    a. An Arizona DPS report documented the arrest of MARTINEZ on March 22, 2021, for violation of A.R.S. § 28-708 (street racing) in Mesa, Arizona. MARTINEZ was driving a white Infinity Q50 (Arizona plate CVK0329) that was registered to Emily Woods at his same address on 40th Street.

    b. A Phoenix Police Department incident report documented an encounter with MARTINEZ on April 16, 2021, during a suspected street racing gathering. MARTINEZ was driving the same Infinity Q50 that he had been arrested driving on March 22, 2021.

19. On September 9, 2021, at 7:30 a.m., TFO Aldo Aviles and I returned to the 40th Street address to attempt to locate and identify MARTINEZ. I located the white Infiniti Q50

6

registered to Emily Woods in the driveway of the Target Residence in front of MARTINEZ's Jeep Patriot. I established surveillance of the front porch area and saw the front door of the residence open and close for approximately 10-minute intervals between 7:30 a.m. to 10:45 a.m. to allow a dog to go out to the front porch. At approximately 10:45 a.m., I saw Woods, identified from an Arizona MVD photo, walk out onto the front porch of the residence while talking for approximately a minute, then walk back inside of the residence with a brown dog, leaving the front door open. A few moments later, I could hear Woods inside of the residence and then heard a male subject loudly grunting as if he were angry, and then heard the male voice loudly call the name "Emily" followed by an angry toned statement with the word "leave" and other inaudible words in the same voice afterward. A few seconds later, the front door slammed shut. At 10:52 a.m., I saw MARTINEZ open and close the front door and begin walking quickly toward the front porch steps then to the Infiniti. MARTINEZ appeared nearly identical to his Arizona MVD photo. MARTINEZ got into the driver's seat of the Infiniti, started the car, and drove away from the residence toward 40th Street. The vehicle had a very loud exhaust that could be heard as the vehicle traveled southbound to Broadway Road, then traveled at a high rate of speed westbound on Broadway Road toward Val Vista Road.

   20. I called TFO Nuno after MARTINEZ left the area and requested TFO Nuno to play an audio recording of MARTINEZ's phone conversation with an undercover agent during the human smuggling event that was coordinated in Sells, Arizona, on August 26, 2021. TFO Nuno played the audio file for me, and I identified the voice of the coordinator utilizing phone number 602-299-2246 as the same voice that I heard yelling inside of the residence at Woods just prior to MARTINEZ exiting the residence and getting into the Infiniti. Based on these observations and information obtained from phone subscriber information, I have identified MARTINEZ as the coordinator of the human smuggling event on August 26, 2021.

### WhatsApp Smuggling Coordination September 21, 2021 – September 22, 2021

   21. On September 21, 2021, between 5:45 p.m. and 7:37 p.m., UCA-2715 had a text conversation with MARTINEZ via the WhatsApp messaging application. UCA-2715 asked

7

MARTINEZ if he had any "work" for tomorrow and MARTINEZ affirmed. The location was described by MARTINEZ as being Sells or Sasabe, Arizona, and was unsure of which location it would be.

22. On September 22, 2021, between 10:25 a.m. and 5:02 p.m., MARTINEZ asked UCA-2715 if they were "ready to drive." UCA-2715 affirmed and asked when and where, and MARTINEZ said in Sasabe, Arizona. MARTINEZ stated that there would be no "check," possibly meaning an immigration checkpoint, that UCA-2715 would have to pass through after they picked up the smuggled non-citizens. MARTINEZ said that he would pay UCA-2715 $5,200 for transporting 5 subjects, stating that one of the subjects was a "walker," a term used by smuggling associates to identify a person as a foot guide of smuggled subjects. MARTINEZ added that they don't pay for the transportation of the "walker." UCA-2715 agreed and said they would need a little time to get a vehicle, and MARTINEZ affirmed and asked UCA-2715 to send him a picture of the vehicle once they obtained it. UCA-2715 told MARTINEZ that they wanted the subjects to be ready to be picked up unlike the last pick up, and MARTINEZ assured UCA-2715 that the subjects would be ready to be picked up on the side of the road, adding that they had people that went yesterday, and the smuggled immigrants were "always ready."

23. At approximately 2:32 p.m., UCA-2715 asked MARTINEZ if the pick-up was going to happen since they had not heard from him since 10:56 a.m. MARTINEZ affirmed and apologized, stating that he had court regarding a street racing charge. MARTINEZ stated that he had just got home at 2:52 p.m. and said he was waiting for someone to text him back. A few hours later, UCA-2715 asked MARTINEZ for an update. MARTINEZ said he hadn't heard back and was still waiting for an update. UCA-2715 told MARTINEZ that they were in Three Points, Arizona and told MARTINEZ to let him know if it was going to happen today or if he would have to come back another day. MARTINEZ told UCA-2715 that he would call his boss, and approximately 20 minutes later responded with a message saying that his boss told him the people are still a little way out from the pick-up location and that they would hopefully be available tomorrow. During this conversation, UCA-2715 scrolled through the posts of Snapchat

display name "GET-_-BIG" and discovered posts within the two days prior to the conversation advertising for drivers and stating that he had "easy work", with pictures of wads of $20 US bills wrapped in rubber bands as well as $100 US bills laid out showing that he had money to pay drivers for work.

24.    On September 23, 2021, I conducted follow up investigation into the claim by MARTINEZ that he had a court date for street racing. I found through a court search that MARTINEZ had received a citation on August 10, 2021, from the Phoenix Police Department for civil traffic offenses charged in Phoenix Municipal Court case. I called the court and was informed that MARTINEZ did have a court date on September 22, 2021, regarding that case, and that the case had been continued to November 2021. Based on this information, agents believe this to be another factor in the positive identification of MARTINEZ as Snapchat display name "GET-_-BIG".

### October 2021, Alien Smuggling Event

25.    On October 12, 2021, UCA-2715 inquired about human smuggling work. MARTINEZ told UCA-2715 that he had work in Sierra Vista, describing it as "Sierra vista [Arizona] easy ass work I can pay 500 a head". When asked if there was any closer work, MARTINEZ affirmed but stated that the "risk was higher." Based on my training and experience, I believe that this statement refers to the risk of being caught being higher than Sierra Vista, Arizona. UCA-2715 said closer work for more money would be better, and MARTINEZ said he would "see whats up" and told UCA-2715 to give him time.

26.    On October 13, 2021, at approximately 6:24 a.m., UCA-2715 inquired about the work discussed on October 12, 2021. MARTINEZ said that he only had the work in "Seirra vista," stating that he would pay UCA-2715 "600 and as many as you want just gotta be there at 5:30 AM". UCA-2715 confirmed that the work would be for "tomorrow,", and MARTINEZ affirmed. UCA-2715 then transferred the work and MARTINEZ to UCA-8229 for the pick-up of the aliens.

9

27. At approximately 10:57 a.m., I established surveillance on the Target Residence. I saw that both vehicles known to be utilized or registered to MARTINEZ parked at or near the residence.

28. UCA-8229 then messaged MARTINEZ and the two then discussed the coordination of the pickup of "people" in Sierra vista around 6:00 a.m. on October 14, 2021. MARTINEZ told UCA-8229 to pick-up the people and drop them off in Phoenix, Arizona, and that UCA-8229 would be paid "600 a head." MARTINEZ stated the people would be picked up on the side of a road. UCA-8229 asked about being paid for all of the "people" since the last time UCA-8229 had been told that MARTINEZ would not pay for all of the people, which MARTINEZ replied that "If you have walkers sometimes you don't" and that "depending on what group you get and how many there are" would determine payment. MARTINEZ stated that he would give further details soon and that he was "busy."

29. At approximately 11:59 a.m., I saw Woods and MARTINEZ exit the front door of the Target Residence and leave the residence. I had been observing the Target Residence during the conversation described above. I did not see MARTINEZ come or go from the residence during the conversation the conversation. The front door is the only door of the residence that would allow access into and out of the residence.

30. Based on this information, as well as the text conversation coordinating pick up efforts in Sasabe, Arizona, on September 22, 2021, where MARTINEZ stated that he had just got home and would reach out to check on the smuggling efforts, I believe that MARTINEZ coordinates human smuggling and the payment for said activities from the Target Residence.

31. Based on my training and experience, human smugglers and/or smuggling coordinators keep items such as books, records, receipts, notes, ledgers, and other papers documenting and/or relating to the smuggling of aliens and/or the payment of smuggling fees associated to alien smuggling. Additionally, human smuggling coordinators have been known to keep items such as US Currency and safes to store the currency in, cellular telephones to coordinate the smuggling of aliens and the payment of smuggling dues by smuggled aliens and

keep items such as US Currency and safes to store the currency in, cellular telephones to coordinate the smuggling of aliens and the payment of smuggling dues by smuggled aliens and payment to other human smuggling associates for participation in human smuggling activities. The aforementioned items have been located in the residences or living spaces of smuggling associates so that the items can be safeguarded by the smuggling associates as well as used by the smuggling associates to track their own activities and to store proceeds of the illicit activity in which they are participating in.

## CONCLUSION

33. Based on the information contained within this affidavit, I submit that there is sufficient probable cause to believe that the Target Residence has been and continues to be involved in human smuggling activity and contains evidence of violations of 8 U.S.C. § 1324. I request permission to search the property described in Attachment A for the items listed in Attachment B.

Respectfully submitted,

CHAD L LAKOSKY
Digitally signed by CHAD L LAKOSKY
Date: 2021.10.13 21:38:03 -07'00'

Chad Lakosky, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this 13 day of October 2021.

Honorable Michelle Burns
United States Magistrate Judge

11